UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JACOB GLENN BLANKENSHIP                                           Plaintiff

v.                                          Civil Action No. 3:23-cv-235-RGJ

LOUISVILLE-JEFFERSON COUNTY                                      Defendant
METRO GOVERNMENT, KENTUCKY and
ELLIOT YOUNG

* * * * *

**MEMORANDUM OPINION AND ORDER**

Defendant Elliot Young ("Young") moved to dismiss for lack of subject matter jurisdiction and failure to state a claim.  [DE 11].  Plaintiff Jacob Glenn Blankenship ("Blankenship") responded and Young replied.  [DE 17; DE 18].  Subsequently, Defendant Louisville-Jefferson County Metro Government ("Metro") filed a motion to dismiss for lack of standing.  [DE 22].  Blankenship responded and Metro replied.  [DE 28; DE 29].  These motions are ripe.  For the reasons below, Metro's motion to dismiss is **DENIED** and Young's motion to dismiss is **GRANTED**.

I.      **Background**

This action arises from Blankenship's arrest outside Churchill Downs on the day of the 2022 Kentucky Derby.  [DE 1 at 7].  Blankenship alleges that, on May 7, 2022, he was "peacefully sharing his message outside Churchill Downs" by displaying signs and flags, distributing literature, and engaging in one-on-one conversations on Central Avenue between 3rd Street and 4th Street.  [*Id.* at 7–8].  He claims that he was on a "non-ticketed" public sidewalk that was "open to pedestrians" when he was arrested by Young, a uniformed Kentucky State Police Trooper.  [*Id.*].  Young, accompanied by other uniformed officers, arrested Blankenship for criminal trespass,

1

informing him that he had been warned he could not be there.  [*Id.* at 8].  According to the complaint, the police report claimed Blankenship was "instructed to leave by security as well as Churchill Downs staff . . . but refused to do so." [*Id.*].  Blankenship disputes this, alleging he was never warned.  [*Id.*].  After being handcuffed and placed inside a windowless law enforcement vehicle where it was "completely dark," Blankenship alleges he was left there for "approximately one hour." [*Id.* at 9].  He asserts that this experience was "severely traumatic," particularly because he suffered from Post-Traumatic Stress Disorder ("PTSD") as a result of his combat service in the United States Army.  [*Id.*].  Finally, Blankenship was transferred to another windowless vehicle, transported to the Louisville Metro Department of Corrections, subjected to a body search, and incarcerated for "approximately ten hours." [*Id.*].  Ultimately, the criminal trespassing charge was dismissed on July 26, 2022.  [*Id.*].

After sending a letter to Metro's mayor, [*id.*], Blankenship filed this lawsuit bringing four causes of action including § 1983 claims against Metro and Young for "unconstitutional code and policy as applied" in violation of Blankenship's First Amendment rights under the free speech clause (Count I) and free exercise clause (Count II), and Fourteenth Amendment rights under the Due Process Clause (Count IV).  [*Id.* at 14–21].  Blankenship also brought a false arrest claim against only Young (Count III).  [*Id.* at 19–21].

## II.    Metro's Motion to Dismiss

Two motions to dismiss are pending in this case—Young's motion for lack of subject matter jurisdiction and failure to state a claim and Metro's motion for lack of subject matter jurisdiction.  [DE 11; DE 22-1].  The Court turns first to whether it has subject matter jurisdiction over the claims against Metro.  Metro seeks dismissal of all claims against it under Rule 12(b)(1), arguing that Blankenship does not have standing.   [DE 22-1 at 104].

**A. Standard**

Federal Rule of Civil Procedure 12(b)(1) allows dismissal for "lack of jurisdiction over the subject matter" of claims asserted in the complaint. Fed. R. Civ. P. 12(b)(1). Generally, Rule 12(b)(1) motions fall into two categories: facial attacks and factual attacks. Fed. R. Civ. P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In a facial attack, the Defendant asserts that the allegations in a Complaint are insufficient on their face to invoke federal jurisdiction. *Id.* In a factual attack, the Defendant disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction, and the Court is free to weigh the evidence and resolve factual disputes. *Id.*; *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 918 (6th Cir. 1986)). Plaintiff has the burden of proving subject matter jurisdiction to survive a motion to dismiss pursuant to Rule 12(b)(1). *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). Lack of subject matter jurisdiction is a non-waivable, fatal defect. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990).

This case purports to bring a factual attack to subject matter jurisdiction based on standing. [DE 22-1 at 101–02]. "If [a plaintiff] cannot establish constitutional standing, their claims must be dismissed for lack of subject matter jurisdiction." *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007) (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)). Plaintiffs bear the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Article III standing requires a plaintiff to show:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as

opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Loren*, 505 F.3d at 607 (quoting *Cleveland Branch NAACP v. City of Parma*, 263 F.3d 513, 523–24 (6th Cir. 2001)).

### B.  Standing Analysis

Metro argues that Blankenship has failed to allege an injury that is fairly traceable to it because his alleged injury was caused by an independent third party.  [DE 22-1 at 104 (quoting *Turaani v. Wray*, 988 F.3d 313, 316 (6th Cir. 2021) (internal citations omitted))].  According to Metro, because Blankenship was arrested by the Kentucky State Police and Metro "did not authorize the removal or arrest of [Blankenship]," it follows that he has no standing to sue Metro. [*Id.*].  Blankenship responds that he does have standing because Metro authorized the actions of Churchill Downs and the Kentucky State Police via permit.  [DE 28 at 140].  He argues that "[t]he decision to have [Blankenship] removed was only *possible* because of the permit issued by Metro Government pursuant to its own Code . . . it was *authorized* by Metro Government."  [*Id.* at 143 (emphasis in original)].  Blankenship also argues that Metro's motion was erroneously brought as a 12(b)(1) motion, but is actually a 12(b)(6) motion, meaning that all allegations set forth in the complaint must be taken as true.  [*Id.* at 147–50].

Although Metro's motion to dismiss under Rule 12(b)(1) purports to be a factual attack on subject matter jurisdiction, its argument reveals that it is not.  Metro's argument—contained on one page in its motion to dismiss—asserts that the facts alleged in Blankenship's complaint do not show Metro caused an injury-in-fact to Blankenship.  [*See* DE 22-1 at 104 ("Here, Plaintiff fails to show that his injury was traceable to actions of the Defendant. Standing requires a specific action by the defendant in order for the litigant to demonstrate an injury-in-fact.").  And Metro does not dispute any of the factual allegations in Blankenship's complaint, only arguing that the

4

alleged facts show his injury was caused by third parties, not by Metro.  [DE 22-1 at 104].

Blankenship asserts that this argument involves a "merits-related determination," *Arbaugh v. Y &

H Corp.*, 546 U.S. 500, 511 (2006), and not a challenge to a jurisdictional "prerequisite." *Wright

v. U.S.*, 1996 U.S. App. LEXIS 12438, at *10 (6th Cir. 1996) (explaining that 12(b)(1) motions

bringing a factual challenge to jurisdiction "will often have nothing to do with the merits of the

case").  [DE 28 at 148].  As Blankenship correctly points out in his response, many of the cases

cited by Metro deal with challenges to facts which would form the basis for subject matter

jurisdiction but are entirely unrelated to the merits of the case.  [DE 28 at 149]; *see Cartwright v.

Garner*, 751 F.3d 752 (6th Cir. 2014) (discussing federal jurisdictional ramifications of a state

court first asserting jurisdiction); *Moir*, 895 F.2d 266 (discussing whether statutory exemption

applied to defendants); *Rogers*, 798 F.2d 913 (discussing whether a statute applied to an employer

with fewer than eight employees).

In its reply, Metro attempts to recharacterize its motion as a facial attack on subject matter

jurisdiction, not a factual one.  [DE 29 at 154].  Metro plainly sought to bring a factual challenge,

citing cases explaining the standard of review when a defendant attacks the factual basis for

jurisdiction.  [*See* DE 22-1 at 101–02 ("When a Rule 12(b)(1) motion attacks the factual basis for

jurisdiction, as is the case here, the district court has broad discretion over what evidence to

consider and may look outside the pleadings to determine whether subject-matter jurisdiction

exists."), 102 ("[T]he court is empowered to resolve factual disputes when subject matter

jurisdiction is challenged.")].  But Metro's argument does not attack any of the factual basis for

jurisdiction.  While the Court agrees with Blankenship that Metro has not made a factual challenge

to jurisdiction under Rule 12(b)(1), it does not agree that the motion is best considered under Rule

12(b)(6).  Although Metro confuses a facial challenge with a factual challenge under Rule 12(b)(1),

it still argues that Blankenship has failed to establish *standing* to bring *any* claims against Metro, not that Blankenship has failed to state a claim under the First Amendment or the Fourteenth Amendment.  Instead, even though Metro believed it was making a 12(b)(1) factual challenge to standing, the Court finds that the motion should be considered as a 12(b)(1) facial challenge because it "merely questions the sufficiency of the pleading" to establish standing.  *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

"At the motion to dismiss stage, 'a facial attack on the pleadings for lack of standing' requires courts to 'accept the allegations set forth in the complaint as true, drawing all inferences in favor of the plaintiff.'"  *Attitude Wellness, LLC v. Vill. of Pinckney*, 606 F. Supp. 3d 624, 637 (E.D. Mich. 2022) (citing *Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 756 (6th Cir. 2019)); *see also Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 579 (6th Cir. 2014) ("As with a 12(b)(6) motion, we must accept the allegations set forth in the complaint as true, drawing all inferences in favor of the plaintiff."); *Foster v. Health Recovery Servs., Inc.*, 493 F. Supp. 3d 622, 629 (S.D. Ohio 2020) ("A facial attack on subject matter jurisdiction is reviewed under the same standard as a 12(b)(6) motion to dismiss.").

Blankenship's complaint alleges that Metro issued the permit that "purportedly allow[ed] Churchill Downs to exclude any individual from traditional public fora for any reason" and that Blankenship could not have been arrested for trespassing but for that permit.  [DE 1 at 5–6; DE 28 at 140–41, 143].  He cites the portion of Metro's code that authorized the creation of the permitting scheme and alleges that Metro issued a permit to Churchill Downs "pursuant to the Code."  [DE 1 at 6].  Blankenship is correct that Metro merely cites the allegations of the complaint but "disputes none of them."  [DE 28 at 142].  Metro does not dispute any of the facts that, taken together, allege that Young "could not even have acted at all *but for* the permit issued by" Metro.  [DE 28 at 144

(emphasis in original)].   These facts demonstrate a clear injury-in-fact (the arrest) that was traceable directly to Metro's permitting scheme.   As a result, Blankenship's complaint alleges sufficient facts to establish standing, therefore Metro's motion to dismiss is **DENIED**.

Additionally, Metro argues in its reply that it alternatively "requested judgment on the pleadings" in its motion to dismiss and proceeds to argue Blankenship fails to state a *Monell* claim. [DE 29 at 155–56].   But Metro moved for "judgment on the pleadings for lack of subject matter jurisdiction" in name only.   [DE 22-1 at 100].   Beyond this single sentence in the first paragraph, the motion contains no law, argument, or even reference to a basis for judgment on the pleadings that would be separate from the motion to dismiss for lack of standing under Rule 12(b)(1).   And none of Metro's arguments regarding the specific elements of a *Monell* claim in its reply appear anywhere in its motion to dismiss.   [*See* DE 29 at 155–56].   As such, these arguments that do not involve standing are waived.   *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (quoting *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration."); *Palazzo v. Harvey*, 380 F. Supp. 3d 723, 730 (M.D. Tenn. 2019) ("Generally speaking, arguments raised for the first time in reply briefs are waived[.]"); *Malin v. JPMorgan*, 860 F. Supp. 2d 574, 577 (E.D. Tenn. 2012) (quoting *Cooper v. Shelby Cnty.*, No. 07–2283–STA–cgc, 2010 WL 3211677, at *3 n. 14 (W.D. Tenn. Aug. 10, 2010)) ("It is well-settled that a movant cannot raise new issues for the first time in a reply brief because consideration of such issues 'deprives the non-moving party of its opportunity to address the new arguments.'").   Accordingly, to the extent that Metro did move for judgment on the pleadings, the motion is **DENIED**.

### III.    Young's Motion to Dismiss

Young moves to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).  [DE 11 at 57].  The Court first addresses subject matter jurisdiction.

#### A.  Rule 12(b)(1) – Subject Matter Jurisdiction

As discussed above, Rule 12(b)(1) allows dismissal for "lack of jurisdiction over the subject matter" of claims asserted in the complaint.  Fed. R. Civ. P. 12(b)(1).  Lack of subject matter jurisdiction is a non-waivable, fatal defect.  *Von Dunser*, 915 F.2d at 1074.

In this case, Young moves to dismiss all "official capacity" claims, arguing the Court lacks subject matter jurisdiction because they are barred by the Eleventh Amendment.  [DE 11 at 58– 60].  But Blankenship clarifies in his response that he brings no official capacity claims against Young, only a claim in his individual capacity.  [DE 17 at 77].  Therefore, to the extent that any official capacity claims were alleged, Young's motion to dismiss on this ground is **GRANTED**.

#### B.  Rule 12(b)(6) – Failure to State a Claim

Young argues that Blankenship has failed to show Young lacked probable cause, therefore he has failed to state a claim for false arrest.  [DE 11 at 62].  Young only challenges the false arrest claim under Rule 12(b)(6), and so the Court only considers the motion as it pertains to Count III.

##### a.  Standard

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6). To properly state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all

reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

"A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020) (citing *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005)). Generally, "[p]robable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Sykes v. Anderson*, 625 F.3d 294, 306 (6th Cir. 2010) (citation and internal quotations omitted). "For probable cause to exist for an arrest, the 'facts and circumstances within the officer's knowledge [must be] sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has

committed, is committing or is about to commit an offense.'"  *Weser*, 965 F.3d at 513 (alteration in original) (quoting *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003)).

The complaint alleges Blankenship was arrested under KRS 511.080, which states: "A person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in or upon premises."  Therefore, Young had probable cause if "on the basis of the facts known to [him], [he] could have reasonably concluded that [Blankenship] knowingly entered or remained" unlawfully in the area he was arrested.  *Skovgard v. Pedro*, 448 F. App'x 538, 544 (6th Cir. 2011).

### b.  *Analysis*

Young argues he had probable cause to arrest Blankenship because the area where the arrest took place "was at the time designated part of Churchill Downs property."  [DE 11 at 63].  Young also points out that the complaint "seems to allege simultaneously that the Plaintiff was arrested on a public, un-ticketed area part of Central Avenue" and also an area that was "at the time permitted by Churchill Downs."  [*Id.* at 62].  Blankenship alleges under Count III that, at the time of his arrest, he was lawfully located on "non-ticketed public streets and sidewalks that were open to the public."  [DE 1 at 19].  He then alleges that it was "obviously not a ticketed area" because it was "being traversed by the general public" and that Young "knew or should have known" he was not permitted to arrest Blankenship in this area for trespassing.  [*Id.* at 19–20].  Blankenship reaffirms this position in his response, arguing the area where he was arrested was "not an extension of the private property" but rather "public property and a traditional public forum."  [DE 17 at 79].

Although he does not use these words, Young's argument that he had probable cause to arrest Blankenship by virtue of Metro's permitting scheme is essentially an argument that he is

entitled to qualified immunity.  The Sixth Circuit has explained that when qualified immunity is raised in a false arrest case:

> The first step is to determine whether the facts alleged make out a violation of a constitutional right.  In this case, the right involves freedom from arrest in the absence of probable cause.  If the plaintiff has shown a violation of a constitutional right, then the second step is to ask if the right at issue was clearly established when the event occurred such that a reasonable officer would have known that his conduct violated it.

*Wesley v. Campbell*, 779 F.3d 421, 428–29 (6th Cir. 2015) (cleaned up) (quoting *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir.2013).  And "[u]nder prong two of the qualified-immunity test, government officials are not liable so long as their belief that there was probable cause to arrest and detain a suspect was reasonable in light of the law that was clearly established at the time of the arrest." *B.R. v. McGivern*, No. 4:13CV907, 2016 WL 5661610, at *7 (N.D. Ohio Sept. 30, 2016), *aff'd*, 714 F. App'x 528 (6th Cir. 2017); *see also Hunter v. Bryant*, 502 U.S. 224, 227–28 (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)) ("Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity.").  Young's argument speaks directly to this prong by arguing that he acted pursuant to the permitting scheme which was validly enacted under Metro's code.

The question then is whether Young adequately raised the qualified immunity defense. Courts have applied Federal Rule of Civil Procedure 8(c) to qualified immunity, the essential purpose of which is "to give the opposing party notice of the affirmative defense and a chance to respond."[1] *Sexton v. Cernuto*, No. 19-12574, 2021 WL 949541, at *4 n. 2 (E.D. Mich. Mar. 12, 2021) (citing *Murphy v. Lazarev*, 589 F. App'x 757, 764 (6th Cir. 2014)).  Under this rule, "what matters is not whether the magic words 'affirmative defense' appears in pleadings, but whether the

---

[1] This is true even though qualified immunity is technically "an *immunity from suit* rather than a mere defense to liability[.]"  *Hunter*, 502 U.S. at 227 (emphasis in original) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Court and the parties were *aware of the issues involved*."  *New Hampshire Ins. Co. v. Marinemax of Ohio, Inc.*, 408 F. Supp. 2d 526, 529 (N.D. Ohio 2006) (emphasis in original) (citation and quotation omitted).  Here, the Court finds that Young adequately raised a qualified immunity defense.  *C.f. Johnson v. Clafton*, 136 F. Supp. 3d 838, 847 (E.D. Mich. 2015) (holding defendant did *not* adequately raise qualified immunity because he "must do more than quote legal standards on what counts as clearly-established law" when "[h]e merely quote[d] standards governing the clearly-established prong and then argue[d] the other prong").  Several cases Young cites in his motion to dismiss that discuss probable cause do so in the context of qualified immunity.  *See, e.g.*, *Legenzoff v. Steckel*, 564 F. App'x 136 (6th Cir. 2014); *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733 (7th Cir. 2003); *D.C. v. Wesby*, 583 U.S. 48 (2018).  And in Blankenship's response, he focuses the bulk of his argument on "well-established First Amendment law" to assert that Young "did not have a reasonable basis, much less probable cause, to believe Blankenship was committing criminal trespass" because the area where Blankenship was arrested was "a traditional public forum and Young should have recognized this reality."  [DE 17 at 77–79].  This also speaks directly to the second prong of the qualified immunity test—whether an officer's "belief that there was probable cause to arrest and detain a suspect was reasonable in light of the law that was clearly established at the time of the arrest."  *McGivern*, 2016 WL 5661610, at *7.  Thus, even though neither party uses the words "qualified immunity," their arguments speak so squarely to its elements that the Court finds it adequately raised for the purpose of analyzing probable cause.

The Court notes that "[q]ualified immunity, pleading requirements, and Rule 12(b)(6) have a complicated relationship."  *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 761 (6th Cir. 2020).  Although "the fact-intensive nature of qualified immunity makes it often a bad fit for Rule 12(b)(6)," sometimes it is "best resolved in a motion to dismiss . . . when the *complaint* establishes

the defense." *Id.* at 761–62 (emphasis in original) (citing *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019) and *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016)).  In such a case, as here, the Court must ask (1) "whether the complaint plausibly alleges 'that an official's acts violated the plaintiff's clearly established constitutional right,'" *id.* at 762 (quoting *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011)), and then (2) "[i]f, taking all the facts as true and reading all inferences in the plaintiff's favor, the plaintiff has not plausibly showed a violation of his clearly established rights, then the officer-defendant is entitled to immunity from suit." *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  That is the situation in this case, where Blankenship alleged on the face of the complaint that Young "lacked probable cause to arrest" Blankenship for criminal trespass and Young "knew or should have known that he should not have proceeded to arrest" Blankenship "because the area was a non-ticked public area open [to] the public." [DE 1 at 20].  Indeed, the parties' probable cause arguments are impossible to resolve without wading into such an analysis.[2]

Turning to the arguments, Blankenship's complaint makes two allegations that contradict each other: that (1) Young should have known the area where he arrested Blankenship was a public forum and (2) Metro "created a permitting scheme purportedly allowing Churchill Downs to exclude any individual from traditional public fora for any reason, even merely if Churchill Downs did not want an individual to be on non-ticketed public streets and sidewalks." [DE 1 at 6, 19–20].  The complaint further alleges that the permitting scheme "allow[ed] private entities to convert traditional public fora into non-public fora" and, pursuant to that scheme, Metro's "officers, employees, and agents, as well as state law enforcement officers, enforced the decision of

---

[2] This also comports with the Supreme Court's admonition that "questions of qualified immunity should be resolved 'at the earliest possible stage in litigation,' or else the 'driving force' behind the immunity— avoiding unwarranted discovery and other litigation costs—will be defeated." *Everson v. Leis*, 556 F.3d 484, 492 (6th Cir. 2009) (quoting *Pearson*, 555 U.S. at 231).

Churchill Downs to exclude individuals from the non-ticketed public streets and sidewalks surrounding the racetrack." [*Id.* at 6–7].  Taking these facts as true (as the Court is required to do), it is not plausible that Young lacked probable cause given that he was one of the "state law enforcement officers" enforcing Metro's permitting scheme.[3]

The complaint itself alleges that (1) Blankenship was located on the sidewalk, (2) Metro's permitting scheme purported to allow Churchill Downs to exclude individuals from the sidewalk for any reason, and (3) Churchill Downs wanted Blankenship removed pursuant to the permitting scheme. While the Court expresses no opinion on the merits of Count I, II, and IV, even if Blankenship were correct that Metro's permitting scheme violated the Constitution, the complaint makes clear that Young acted pursuant to that permitting scheme when he arrested Blankenship. Indeed, the basic legal premise for Count I, II, and IV relies on the assertion that Metro's city code and permitting scheme is what authorized Blankenship's arrest by giving "Defendants opportunity to enforce speech restrictions in an *ad hoc*, arbitrary, and discriminatory manner."[4]  [*Id.* at 21].

---

[3] The Court notes that, in general, "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3).  But that rule does not affect the analysis in this case because these are "clashing factual assertions . . . in the context of the same claim." *Jiangbo Zhou v. Lincoln Elec. Co.*, No. 1:20-CV-00018, 2020 WL 2512865, at *4–5 (S.D. Ohio May 15, 2020) (quoting *Aaron v. Medtronic, Inc.*, 209 F. Supp. 3d 994, 1015 (S.D. Ohio 2016)); *see also Pierce v. Fordham Univ., Inc.*, No. 15-CV-4589 (JMF), 2016 WL 3093994, at *2 n. 1 (S.D.N.Y. June 1, 2016) ("It is well established that, where a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss.") (citation and internal quotations omitted), *aff'd*, 692 F. App'x 644 (2d Cir. 2017).  Blankenship's factual allegations in Count III stand in contrast to the allegations in the general fact section, which presumably applies to all counts in the complaint.  Therefore, it falls on the impermissible side of "[t]he distinction between inconsistent claims, which are permissible, and inconsistent factual allegations in support of a single claim, which are not[.]" *Aaron*, 209 F. Supp. 3d at 1016.  While it is true that *Jiangbo Zhou* and some other cases (but not *Aaron*) have reached this conclusion where documents attached to a complaint were considered, they did not rely on that context as the reason the distinction applied.  *See Jiangbo Zhou*, WL 2512865, at *4 (comparing two parts of the complaint itself).

[4] Blankenship stated this premise even more clearly in a separate response to Metro's motion to dismiss, arguing "[t]he decision to have [Blankenship] removed was only *possible* because of the permit issued by Metro Government pursuant to its own Code . . . it was *authorized* by Metro Government." [DE 28 at 143 (emphasis in original)].

Blankenship could not plausibly allege that Young would have had reason to believe the permitting scheme was constitutionally invalid, given that "[w]hen public officials implement validly enacted state laws that no court has invalidated, their conduct typically satisfies the core inquiry—the 'objective reasonableness of an official's conduct'—that the immunity doctrine was designed to test." *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440–41 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   Even a case that appears in Blankenship's response, [DE 17 at 77–78], acknowledges:

> The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws. Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement.

*Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979).  Metro's code that created the permitting scheme was exactly such a validly enacted law.

Finally, in contrast with the alleged police narrative, Blankenship alleges that he was not told he was trespassing or given an opportunity to leave before his arrest. [DE 1 at 9].  Blankenship argues in his response that criminal trespass in the third degree "presupposes the guilty party knows he is committing trespass," [DE 17 at 79], which may also relate to probable cause.  In *Skovgard v. Pedro*, the Sixth Circuit considered whether two officers "were required to determine where the public right of way ended" before arresting protestors for trespassing.  448 F. App'x at 546. Because the officers "had personally observed the alleged trespassers in the area believed to be private property," the *Skovgard* court concluded the officers were "entitled to qualified immunity" because "a reasonable person in the officers' position would not have thought that he was acting unlawfully by failing to further investigate the boundaries of the public right-of-way[.]"  *Id.* at 547. In contrast to *Skovgard*, the complaint here alleges that Blankenship was by no means the only

15

person on the sidewalk acting as a "buffer zone."  [DE 1 at 6].  But as the complaint also alleges, Young personally observed Blankenship in the buffer zone, stated to Blankenship that he believed he had been warned, and arrested him pursuant to Metro's permitting scheme.  [*Id.* at 4–6].

*Skovgard* also noted that "[a]n officer need not 'investigate independently every claim of innocence'" and "after the officer determines, on the basis of the facts and circumstances known to him, that probable cause exists, the officer has no further duty to investigate or to search for exculpatory evidence."  448 App'x at 544 (quoting *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007)).  Even if Blankenship himself did not actually know he was trespassing, "[t]he validity of the arrest does not depend on whether the suspect actually committed a crime[.]"  *DeFillippo*, 443 U.S. at 36.

In sum, even if Blankenship ultimately prevails on his arguments in Count I, II, and IV—that Metro's permitting scheme could not constitutionally convert a public sidewalk from a traditional public forum to an extension of Churchill Downs' private property—it still provided the understanding Young was operating under when he arrested Blankenship.  For that reason, the facts alleged in the complaint show that Young reasonably believed Blankenship was on private property for the purpose of KRS 511.080, and not within a traditional public forum.  As a result, the Court finds that the complaint has not plausibly alleged that Young lacked probable cause to arrest Blankenship, therefore he is entitled to qualified immunity.

**IV.    Conclusion**

For the reasons explained, and the Court being otherwise sufficiently advised, Metro's motion to dismiss is **DENIED** and Young's motion to dismiss is **GRANTED**.  Accordingly, it is **ORDERED** that:

1. To the extent that any claims were brought against Young in his official capacity, those claims are **DISMISSED**.

2. Count III is **DISMISSED**.

3. All other counts remain pending.

March 21, 2024

Rebecca Grady Jennings, District Judge
United States District Court

cc: counsel of record

17